[Cite as *State v. Carter*, 2018-Ohio-4503.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 18CA1 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| ANTHONY D. CARTER, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 11/02/18** |

_____
APPEARANCES:

Jerry L. McHenry, Pickerington, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Jayme Hartley Fountain, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Pickaway County Court of Common Pleas judgment entry convicting Appellant, Anthony Carter, of ten felony drug offenses, which included one count of engaging in a pattern of corrupt activity, seven counts of trafficking in cocaine, two counts of trafficking in heroin, and sentencing him to an aggregate prison term of thirty-one years. On appeal, Appellant contends that 1) trial counsel rendered ineffective assistance by failing to object to the testimony of Anthony Schwalbauch when he gave opinion testimony as to weights and measures of drugs and

amounts, as well as opinions as to what the wiretap recorded speakers meant by their conversations, and that he was denied his rights to a fair trial, confrontation of witnesses, representation of counsel and due process as a result; and 2) the trial court erred by failing to provide a meaningful sentencing hearing for Appellant, as required by Ohio's sentencing statutes, and that trial counsel further rendered ineffective assistance of counsel by failing to participate in the sentencing hearing.

{¶2}  Because we find the trial court properly admitted the lay witness testimony of Anthony Schwalbauch under Evid.R. 701, we cannot conclude Appellant's trial counsel's failure to object constituted deficient performance or that Appellant was prejudiced by the failure to object.  Consequently, Appellant's first assignment of error is overruled.  With respect to Appellant's second assignment of error, because we conclude the consecutive sentences imposed by the trial court were not contrary to law, we reject Appellant's assertion that he was not provided with a meaningful sentencing hearing, as well as his argument that his trial counsel's failure to participate in the sentencing hearing constituted ineffective assistance of counsel.  Therefore, Appellant's second assignment of error is also overruled.  Accordingly, having overruled both of Appellant's assignments of error, the judgment of the trial court is affirmed.

FACTS

{¶3} Appellant, Anthony Carter, was indicted on multiple felony counts as part of a multi-count indictment naming eleven defendants. While the indictment included seventy-seven counts, only counts one through six, eleven through thirteen, twenty, twenty-two, twenty-three, thirty-five, thirty-six, forty-three, forty-four, forty-eight, forty-nine, sixty-four and sixty-five pertained to Appellant. Prior to trial, the State moved to dismiss, and the trial court dismissed counts two through six, thirteen, twenty-two, twenty-three, forty-three and forty-four. Appellant was subsequently found guilty by a jury of the remaining counts, identified as counts one, eleven, twelve, twenty, thirty-five, thirty-six, forty-eight, forty-nine, sixty-four and sixty-five.

{¶4} The counts in which Appellant was convicted included one count of engaging in a pattern of corrupt activity, seven counts of trafficking in cocaine, and two counts of trafficking in heroin, all of which ranged from first-degree felonies to third-degree felonies. The trial court imposed an aggregate prison term of thirty-one years, ordering the prison terms for counts one, eleven, twelve, twenty, thirty-five, thirty-six, forty-eight and forty-nine to be served consecutively for a total of thirty years. The trial court determined that counts sixty-four and sixty-five merged for

purposes of sentencing and imposed a three-year prison term to be served concurrently with the other prison terms. The trial court further imposed an additional one-year prison term, to be served consecutively to the other prison terms, due to the fact that Appellant violated his post-release control in committing the offenses at issue. The trial court also imposed a five-year mandatory period of post-release control.

{¶5} Appellant's indictment was the result of an investigation into what both parties refer to as either the "Crosby Drug Trafficking Operation" or the "Leslie Alan Crosby drug trafficking operation" located in Circleville, Ohio in 2016. Although Appellant was not the original focus of the investigation, law enforcement became aware of his affiliation and involvement with the drug trafficking operation through the course of their investigation, when they recognized Appellant was a supplier to the operation. The investigation involved law enforcement's receipt of an "intercept warrant" which permitted a wiretap of Crosby's phone, and which ultimately provided law enforcement with recordings of conversations between Appellant, Crosby and others as they set up drug transactions. The investigation further included observation of drug transactions by officers while conducting covert surveillance. No drugs were recovered as part of the investigation.

{¶6} At trial, the State's witnesses included two law enforcement officers involved in the investigation, Special Agent Shawn Rowley from the Ohio Bureau of Criminal Identification and Investigation and Detective John Strawser from the Pickaway County Sheriff's Office. The State also introduced the testimony of Anthony Schwalbauch, Crosby's son-in-law and Appellant's co-defendant. Both law enforcement officers provided testimony regarding what they had heard on the recorded telephone conversations, as well as what they witnessed while performing surveillance. Schwalbauch, who had already entered into a plea agreement in exchange for his cooperation in testifying against Appellant, identified the voices of the speakers on the telephone recordings and explained for the jury what the speakers meant when they used certain code words. He also testified regarding the amount of drugs being referenced during the recorded conversations and the significance of the prices that were being discussed in regards to the identification of the drugs. The recordings from the wiretap were played for the jury at trial. The jury was also shown photographs and surveillance videos from the investigation.

{¶7} As set forth above, Appellant was ultimately convicted on all ten counts that were presented to the jury and was sentenced to an aggregate prison term of thirty-one years. It is from the trial court's entry of sentence

that Appellant now files his timely appeal, setting forth two assignments of

error for our review.

ASSIGNMENTS OF ERROR

"I.    TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
       COUNSEL TO APPELLANT, BY FAILING TO OBJECT TO THE
       TESTIMONY OF ANTHONY SCHWALLBACH [SIC] WHEN HE
       GAVE OPINION TESTIMONY AS TO WEIGHTS AND
       MEASURES OF DRUGS AND AMOUNTS, AS WELL AS
       OPINIONS AS TO WHAT THE WIRETAP RECORDED
       SPEAKERS MEANT BY THEIR CONVERSATIONS.  THIS
       CONSTITUTED A DENIAL OF APPELLANT'S RIGHTS TO A
       FAIR TRIAL, CONFRONTATION OF WITNESSES,
       REPRESENTATION OF COUNSEL AND DUE   PROCESS OF
       LAW AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND
       FOURTEENTH AMENDMENTS OF THE UNITED STATES
       CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO
       CONSTITUTION.

II.    THE TRIAL COURT ERRED BY FAILING TO PROVIDE A
       MEANINGFUL SENTENCING HEARING FOR APPELLANT, AS
       REQUIRED BY OHIO'S SENTENCING STATUTE.  TRIAL
       COUNSEL FURTHER RENDERED INEFFECTIVE ASSISTANCE
       OF COUNSEL BY FAILING TO PARTICIPATE IN THIS
       SENTENCING HEARING."

ASSIGNMENT OF ERROR I

{¶8}  In his first assignment of error, Appellant contends he was

denied the effective assistance of counsel, which resulted in a denial of his

right to a fair trial, confrontation of witnesses, and due process of law.

Appellant argues that his counsel's failure to object to his co-defendant's

opinion testimony regarding weights, measures and amounts of drugs as

referenced on various wiretap recordings, and interpretation of what the speakers meant when they used different code, or slang, words on the recordings, constituted deficient performance. Appellant questions whether his co-defendant should have been qualified as an expert witness, based upon his own drug use, before being permitted to testify as to these matters.

{¶9} The State responds by noting that many courts in Ohio have allowed lay witnesses to testify, under Evid.R. 701, about the identity of a drug when a proper foundation has been laid regarding the lay witness's personal knowledge and experience. The State argues Appellant's co-defendant, Anthony Schwalbauch, clearly possessed sufficient personal knowledge and understanding of the drug trade to testify about common code words and measures as they relate to illicit substances. The State further argues that these particular matters fall outside the specialized, technical expertise contemplated under Evid.R. 702 for expert testimony, that Schwalbauch did not need to be qualified as an expert, and that he did not testify as an expert, but rather as a lay witness, whose testimony was properly admitted under the trial court's broad discretion and in full compliance with Evid.R. 701.

{¶10} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all

criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571U.S. 263, 134 S.Ct. 1081, 1087–1088 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶11}  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland* at 687; *State v. Obermiller*, 147 Ohio St.3d 175, 2016–Ohio–1594, 63 N.E.3d 93, ¶ 83; *State v. Powell*, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶ 85.  "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E .2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶12} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); quoting *Strickland* at 688; *accord Hinton* at 1088. "Prevailing professional norms dictate that with regard to decisions pertaining to legal proceedings, 'a lawyer must have "full authority to manage the conduct of the trial." ' " *Obermiller* at ¶ 85; quoting *State v. Pasqualone*, 121 Ohio St.3d 186, 2009–Ohio–315, 903 N.E.2d 270, ¶ 24; quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646 (1988). Furthermore, " '[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." ' " *Hinton* at 1088; quoting *Strickland* at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95 (citations omitted); *accord Hinton* at 1088; citing *Padilla* at 366; *State v. Wesson*, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶ 81.

{¶13} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687; *e.g., Obermiller* at ¶ 84; *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶14} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that " 'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.' " *Hinton* at 1089; quoting *Strickland* at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641,

952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus (1989). " '[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Hinton* at 1089; quoting *Strickland* at 695. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597. As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014–Ohio–3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013–Ohio–2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012–Ohio–1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009–Ohio–6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶15} Initially, we observe that " '[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999); quoting

*State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). A

defendant must also show that he was materially prejudiced by the failure to

object. *Holloway* at 244. *Accord State v. Hale*, 119 Ohio St.3d 118, 2008–

Ohio–3426, 892 N.E.2d 864, ¶ 233. Additionally, tactical decisions, such as

whether and when to object, ordinarily do not give rise to a claim for

ineffective assistance. *State v. Johnson*, 112 Ohio St.3d 210, 2006–Ohio–

6404, 858 N.E.2d 1144, ¶ 139–140.

> **{¶16}** As the court explained in *Johnson* at ¶ 139–140:
>
> "[F]ailure to object to error, alone, is not enough to sustain a
>
> claim of ineffective assistance of counsel. To prevail on such a
>
> claim, a defendant must first show that there was a substantial
>
> violation of any of defense counsel's essential duties to his
>
> client and, second, that he was materially prejudiced by
>
> counsel's ineffectiveness. *State v. Holloway* (1988), 38 Ohio
>
> St.3d 239, 244, 527 N.E.2d 831. * * *
>
> [E]xperienced trial counsel learn that objections to each
>
> potentially objectionable event could actually act to their party's
>
> detriment. * * * In light of this, any single failure to object
>
> usually cannot be said to have been error unless the evidence
>
> sought is so prejudicial * * * that failure to object essentially

defaults the case to the state. Otherwise, defense counsel must

so consistently fail to use objections, despite numerous and

clear reasons for doing so, that counsel's failure cannot

reasonably have been said to have been part of a trial strategy or

tactical choice. *Lundgren v. Mitchell* (C.A.6, 2006), 440 F.3d

754, 774. *Accord State v. Campbell*, 69 Ohio St.3d 38, 52–53,

1994–Ohio–492, 630 N .E.2d 339.”

{¶17}  Here, Appellant contends his counsel was ineffective for

failing to object to the following trial testimony from his co-defendant,

Anthony Schwalbauch:

1. Testimony that "brown girl" meant heroin;

2. Testimony that "...one and a half, maybe two" actually meant two ounces, not grams, and was in reference to crack cocaine;

3. Testimony that a "mule" was a female who was used to transport drugs "shoved up inside her, and concealed so it would not be detected[;]"

4. Testimony which provided an estimate of how much an ounce and a half of crack cocaine would cost Alan Crosby, either $1,800.00 or $1,900.00;

5. Testimony regarding a prior deal for two ounces for $2,400.00 and that it took a day and a half to get rid of an ounce of crack;

6. Testimony which interpreted a telephone conversation between Crosby and Tommy Barker in which Barker asks if Crosby has any "boy" and explained that "boy" really means heroin;

7. Testimony which interpreted a telephone conversation between Crosby and another person in which the caller referenced a "...car that was half a

gram" and explained that it denoted heroin; and

8. Testimony on cross-examination and re-cross that "girl" or "hard" meant crack cocaine.

{¶18} Appellant also argues Schwalbauch was improperly permitted to testify about what other people, such as Crosby's wife Rhonda and Crosby's family in general, knew. Appellant cites to a call between Crosby and his wife, noted as number 8619 in the trial transcript, in which Crosby's wife is complaining about Crosby sitting in a car and waiting for over three hours to purchase crack cocaine. When asked whether Crosby's wife knew that Crosby was there to purchase crack cocaine, Schwalbauch testified she did, and that the whole family knew.

{¶19} Finally, Appellant argues Schwalbauch should not have been permitted to testify regarding what the phrase "talking a lot" meant when it was used during a recorded telephone conversation between Appellant and Crosby. The trial transcript indicates the following recorded conversation between Alan Crosby and Appellant was played for the jury:

"Anthony Carter:   Hey, that's cool!

Leslie Crosby:  Cause that's the price you asked, right?  A half, point six.  You know, that's $2,600 for two, $1,300 and $1,325 is $2,650, I'm giving you $1,950 so that's one and a half, right?

Anthony Carter:  Yeah!

Leslie Crosby:  Is that right?

Anthony Carter:  Sounds like I aunt' even doing the math.

Leslie Crosby:  Well, do it Bubba!  I'm not cheating you.  I'm giving you $1,325 an ounce, that's one and a half at $1,950.

Anthony Carter:  Yeah, you're talking a lot.  You hear me.

Leslie Crosby:  Okay.  Okay.  You're right.  I'm sorry.  I'll see you when you get there bro!  Bye!"

Anthony Schwalbauch then testified as follows in order to interpret the call:

"Q:  Okay.  Then they said something, Carter says you're talking a lot, you hear me, and Leslie apologizes.  Do you remember that?

A:  Yes.

Q:  Why would he have said something like that?

A:  Sometimes because you think you're being recorded, to use code words instead.

Q:  Was that a concern that Alan had then?

A:  Always.

Q:  Was that just a general concern in the drug world?

A:  Always.

Q:  Did you do that on your personal phone?

A:  Yeah.

Q:  Did you ever talk in ounces and grams about heroin or crack cocaine?

A:  No.

Q: You always use what?

A: Code words."

{¶20} Thus, in summary, Appellant argues his trial counsel should have objected to various statements made by his co-defendant which interpreted code words or slang words used in the drug trade, and which explained the significance of references made by Appellant and Crosby to the price being paid for requested amounts, to the extent the testimony served to identify the drug at issue and the weight or amount of the drug, based upon the language used in the recorded telephone conversations. Appellant also argues Schwalbauch should not have been permitted to testify regarding what Crosby's wife and family "knew" regarding the activities of Crosby or the drug operation in general. Appellant contends his co-defendant should have been qualified as an expert pursuant to Evid.R. 702 before being permitted to testify on these matters and that his counsel's failure to object to the testimony constituted deficient performance. Appellant suggests the failure to object to Schwalbauch's testimony was especially prejudicial, in light of the fact that no drugs were recovered from any of the transactions.

{¶21} Evid.R. 701 governs opinion testimony by lay witnesses and provides as follows:

If the witness is not testifying as an expert, the witness'

testimony in the form of opinions or inferences is limited to

those opinions or inferences which are (1) rationally based on

the perception of the witness and (2) helpful to a clear

understanding of the witness' testimony or the determination of

a fact in issue.

Conversely, Evid.R. 702 governs testimony by experts and provides as

follows:

"A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the

knowledge or experience possessed by lay persons or dispels a

misconception common among lay persons;

(B) The witness is qualified as an expert by specialized

knowledge, skill, experience, training, or education regarding

the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific,

technical, or other specialized information. To the extent that

the testimony reports the result of a procedure, test, or

experiment, the testimony is reliable only if all of the following

apply:

(1) The theory upon which the procedure, test, or experiment is

based is objectively verifiable or is validly derived from widely

accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably

implements the theory;

(3) The particular procedure, test, or experiment was conducted

in a way that will yield an accurate result."

**{¶22}** Contrary to Appellant's argument, and as correctly noted by the

State, since the adoption of the Rules of Evidence, both at the state and

federal levels, many courts have used an Evid.R. 701 analysis and have

allowed lay witnesses to testify about the identity of a drug. *State v.*

*Johnson*, 4th Dist. Gallia No. 13CA16, 2014-Ohio-4032, ¶ 38; citing *State v.*

*McKee*, 91 Ohio St.3d 292, 2001–Ohio–41, 744 N.E.2d 737.  As this Court

noted in *Johnson*:

"[C]ourts have permitted lay witnesses to express their opinions

in areas in which it would ordinarily be expected that an expert

must be qualified under Evid.R. 702.... Although these cases are

of a technical nature in that they allow lay opinion testimony on

a subject outside the realm of common knowledge, they will

fall within the ambit of the rules requirement that a lay witness's

opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid. R. 702, but rather are based upon a layperson's personal knowledge and experience." *Johnson* at ¶ 38.

The Supreme Court of Ohio held, in *McKee,* that the "experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *McKee* at 297; *see also State v. Johnson* at ¶ 39 (allowing lay testimony of the defendant as opinion testimony to identify a hydrocodone pill based upon the fact that the defendant had had a prior prescription for hydrocodone and recognized the pill from her previous experience.); *State v. Jewett*, 4th Dist. Scioto No. 15CA3714, 2017-Ohio-2891, ¶ 34.

{¶23} Further, although lay witness testimony regarding the identity of a drug was permitted based upon the witnesses' visual identification of the drug in Johnson, lay witness testimony has also been permitted in order to interpret code, or slang, terms used in the drug trade, which serve to provide identification of drugs by name, amount and price, as heard on recorded telephone conversations. *See State v. Davis*, 2017-Ohio-495, 85 N.E.3d 136,

¶ 30-31 (12th Dist.) (lay witness testified that slang or jargon was usually used to set up drug deals and that saying "I need a three or a four" means $30 or $40 in reference to crack cocaine, and that one would not actually refer to crack cocaine in case law enforcement had the phone tapped.)  In *Davis,* a proper foundation was laid through testimony that the lay witness at issue had been purchasing crack cocaine, directly or indirectly, from Davis for approximately eight years and was a daily user of crack cocaine. *Id.* Additionally, the *Davis* court permitted the State to present evidence through a lay witness that the phrase "checking on ole girl" reflected a slang term for cocaine. *Id.* at ¶ 39 (also permitting lay witness testimony that recorded conversations indicating Davis stated "one of 'em" in response to being quoted a price of "12, 5" referred to the fact that $1,250 was the standard price for the purchase of one ounce of cocaine, which amounts to 28 grams of cocaine.).  Moreover, much like the case presently before us, the State did not introduce the drugs into evidence in *Davis*, but rather proved its case through circumstantial evidence in the form of voluminous records of calls between Davis and his associates. *Id*. at ¶ 35.

{¶24}  Further, and importantly, this Court has previously noted that:
"* * * in offenses where the state fails to recover and weigh the drugs, the offender may be convicted of the offense and the

penalty enhancement associated with the weight of the drug

involved based on the testimony of lay witnesses, even in the

absence of expert testimony, as long as a proper foundation is

made." *Jewett, supra*, at ¶ 35; citing *Garr v. Warden, Madison*

*Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449, 933 N.E.2d

1063, ¶ 28 (conviction for trafficking in cocaine with major-

drug-offender specification can be supported by lay testimony

where no drug is recovered and no testing is performed).

Similarly, in *State v. Rardon*, 2018-Ohio-1935, -- N.E.3d -- (5th Dist.), the

trial court permitted lay witness testimony from the defendant's business

associate, based upon his experience using steroids in the past. *Id.* at ¶ 5.

The witness provided testimony that the term "gear" was "just a short-term

for steroids where if you're talking in public, you don't want people to, . . .

understand what you're talking about with steroids, so you say gear." *Id*. at

¶ 58.  This testimony was important as the term gear was used in text

messages taken from the defendant's phone.  *Id*. at ¶ 58.

{¶25}  The record indicates that Anthony Schwalbauch was

Appellant's co-defendant and the son-in-law of Leslie Alan Crosby, the

apparent ring-leader of the drug operation.  The investigation of Crosby led

authorities to Appellant as a suspected supplier to Crosby.  Schwalbauch

served as a runner and "drug tester" of the operation. He tested the drugs supplied to the operation by using the substance being purchased to be sure it was of good quality, and was what it purported to be. For instance, the jury heard testimony about a meeting between Appellant, Crosby and Schwalbauch at the Buffalo Wild Wings restaurant in Circleville, Ohio, and also saw photographic evidence indicating Schwalbauch purchased crack cocaine from Appellant and tested it for quality, as part of his role in the drug operation.

{¶26} Schwalbauch testified regarding his experience using drugs and the difference between the high resulting from heroin use versus cocaine use. Thus, it appears Schwalbauch was intimately involved in the drug operation and had the experience necessary to establish a foundation for his testimony. As such, having laid a proper foundation, the State was permitted to introduce further testimony from Schwalbauch as a lay witness to the extent that his testimony dealt with issues outside the realm of common knowledge, was rationally based on firsthand observations and helpful in determining a fact in issue. His testimony aided the jury in interpreting the voluminous recordings of telephone conversations involving Appellant, Crosby and others that all occurred as part of the drug operation.

{¶27}  After our review of the record and consideration of the applicable rules of evidence and above-cited case law, we do not believe that Appellant has shown that trial counsel's failure to object to the eight examples of Schwalbauch's testimony listed above substantially violated any of counsel's essential duties to Appellant or that counsel's failure to object materially prejudiced Appellant's case.  Further, and importantly, a review of the trial transcript reveals that Special Agent Shawn Rowley provided testimony on many of the same issues as Schwalbauch.  For instance, Rowley testified regarding code words for quantities of drugs and what "boy" and "girl" referenced in terms of drugs, and also what the term "mule" meant.  He also identified the voices of Crosby and Appellant on the recorded calls that were played for the jury.  Appellant made no objection below and raises no argument on appeal regarding Rowley's testimony admitted at trial.

{¶28}  With regard to Appellant's argument his trial counsel should have objected to Schwalbauch's testimony regarding what Crosby's wife and family "knew" about his activities, assuming arguendo it was error for the trial court to permit Schwalbauch to testify regarding someone else's knowledge or understanding and that counsel should have lodged an objection, we find any error to be harmless in light of the Schwalbauch's

other testimony we have found permissible.  Finally, with regard to Appellant's argument that there should have been an objection made to Schwalbauch's testimony regarding what Appellant meant when he told Crosby he "was talking a lot," this testimony is very similar to testimony allowed in both *State v. Davis* and *State v. Rardon, supra*.  *Davis* at ¶ 30 (permitting lay testimony explaining that slang terms and jargon was typically used when setting up drug deals and also permitting lay witness testimony to interpret jargon used in reference to weight and price for crack cocaine); *Rardon* at ¶ 58.  As such, we find it permissible here, and not in violation of Evid.R. 701.

{¶29}  As a result, because we cannot conclude that trial counsel's failure to object constituted deficient performance, we find no merit to Appellant's first assignment of error.  Accordingly, Appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

{¶30}  In his second assignment of error, Appellant contends the trial court erred by failing to provide a meaningful sentencing hearing for him, as required by Ohio's sentencing statutes.  Appellant contends trial counsel further rendered ineffective assistance by failing to participate in his sentencing hearing.  The State responds by arguing that Appellant's trial

counsel noted, at the sentencing hearing, that he did not respond to the State's sentencing memorandum because it accurately stated the law with respect to the merger doctrine and "things of [that] nature." The State points out that Appellant's trial counsel asked the trial court "to temper the Appellants' rejection of a generous plea offer by emphasizing Appellant's young age and 'rough upbringing.' " The State further argues the trial court considered all of the appropriate factors and made all the necessary findings in imposing consecutive sentences.

{¶31} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 22-23. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

"(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law."

**{¶32}** Here, Appellant does not expressly contend his sentences were contrary to law, or that the record does not support his sentences. The only sentencing arguments he seems to make is that his sentence was not proportionate to the sentence imposed on Leslie Alan Crosby, and that the trial court did not "meaningfully explain why a series of consecutive sentences were appropriate or how they were necessary to protect the public from future crimes or to punish the Appellant by imposing a minimum sanction." In making this argument, however, Appellant concedes the trial court noted several factors in imposing sentence, including that Appellant had a number of juvenile adjudications and commitments to the Department of Youth Services (DYS), had been convicted of attempted felonious assault and carrying a concealed weapon as an adult, and was on community control at the time of the present offenses. Appellant concedes the trial court also considered the pre-sentence investigation report that was provided, which indicated he had thirty-three rule violations while in prison and was a member of a gang.

**{¶33}** We first address Appellant's argument that his sentence was disproportionate to the sentence or sentences imposed upon Leslie Alan

Crosby. The Third District Court of Appeals has reasoned as follows with respect to disproportionality in sentencing arguments:

> " ' "A defendant alleging disproportionality in felony sentencing has the burden of producing evidence to 'indicate that his sentence is directly disproportionate to sentences given to other offenders with similar records who have committed these offenses * * *." ' " *State v. Norman*, 3rd Dist. Seneca No. 13-13-50, 2014-Ohio-3010, ¶ 17, quoting *State v. Ewert*, 5th Dist. Muskingum No. CT2012-0002, 2012-Ohio-2671, ¶ 31, quoting *State v. Breeden*, 8th Dist. Cuyahoga No. 84663, 2005-Ohio-510, ¶ 81. 'If a defendant fails to argue to the trial court that his sentence is not consistent with or proportionate to sentences imposed for similar crimes committed by similar offenders, then the defendant waives that issue for appeal.' *Id.*, citing *Ewert* at ¶ 31, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 42 and *State v. Lycans*, 8th Dist. Cuyahoga No. 93480, 2010-Ohio-2780, ¶ 5." *State v. VanMeter*, 3d Dist. Allen No. 1-18-18, 2018-Ohio-3528, ¶ 16.

Here, we note that Appellant has provided this Court with no information related to the disposition or sentencing of Crosby, other than a representation that Crosby was sentenced to twelve years in prison.[1]  Appellant makes no argument regarding whether Crosby entered into a plea agreement or what offenses he was ultimately convicted of.  Thus, we cannot determine that Appellant's sentence was disproportionate or that his trial counsel was deficient in failing to argue for a lesser sentence based upon this theory.

{¶34}  Further, the information in the record before supports the trial court's imposition of consecutive sentences.  Under R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Bever*, 4th Dist. Washington No. 13CA21, 2014–Ohio–600, ¶ 16; *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013–Ohio–4649, ¶ 64; *State v. Howze*, 10th Dist. Franklin Nos. 13AP–386, 13AP–387, 2013–Ohio–4800, ¶ 18.  Specifically, the trial court must find that (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and one of the following:

---

[1] The State mentioned Crosby's sentence at the sentencing hearing, noting that Alan Crosby had received twelve years, mandatory, "with additional time over his head."

"(a) The offender committed one or more of the multiple

offenses while the offender was awaiting trial or sentencing,

was under a sanction imposed pursuant to section 2929.16,

2929.17, or 2929.18 of the Revised Code, or was under post-

release control for a prior offense.

(b) At least two of the multiple offenses were committed as part

of one or more courses of conduct, and the harm caused by two

or more of the multiple offenses so committed was so great or

unusual that no single prison term for any of the offenses

committed as part of any of the courses of conduct adequately

reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that

consecutive sentences are necessary to protect the public from

future crime by the offender."

**{¶35}** The trial court "is required to make the findings mandated by

R.C. 2929.14(C)(4) at the sentencing hearing and [to] incorporate its

findings into the sentencing entry, but it has no obligation to state reasons to

support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–

3177, 16 N.E.3d 659, syllabus. Furthermore, the trial court is not required to

recite "a word-for-word recitation of the language of the statute * * *." *Id.* at

¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Id*. at ¶ 37; *Bever* at ¶ 17; *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2013–Ohio–5424, ¶ 22. The findings required by the statute must be separate and distinct findings; in addition to any findings relating to the purposes and goals of criminal sentencing. *Bever* at ¶ 17; *Nia* at ¶ 22.

{¶36} Here, the trial court made all of the necessary findings before imposing consecutive sentences. Further, and importantly, the trial court stated during the sentencing hearing that the pre-sentence investigation report was very damaging and revealed extensive criminal conduct, including juvenile felony offenses, commitments to DYS and adult convictions for attempted felonious assault and carrying a concealed weapon. The trial court further noted that Appellant was on post-release control at the time the current offenses were committed and that Appellant was in a gang.

{¶37} In light of the foregoing, we cannot conclude that Appellant failed to receive a meaningful sentencing hearing. Further, with regard to

Appellant's argument that his trial counsel provided ineffective assistance by failing to participate in his sentencing hearing, we note his counsel did participate in the hearing. He explained that he did not file a sentencing memorandum as the State's memorandum contained accurate information as to the contents of the pre-sentence investigation that was performed and as to the merger doctrine. He further asked the court for leniency in light of Appellant's young age and "rough upbringing." However, accepting Appellant's argument that counsel did not participate in the sentencing hearing to the degree expected by Appellant, we still find no prejudice resulted in light of the fact that the trial court made all of the necessary findings before imposing consecutive sentences, and those findings were supported by the record. As such, even if counsel's performance could be considered deficient, Appellant was not prejudiced by the deficiency.

{¶38} Thus, having found no merit in Appellant's second assignment of error, it is overruled. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**