[Cite as *State v. Smigelski*, 2019-Ohio-4561.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 19CA6 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| ANDREW M. SMIGELSKI, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 11/01/19** |

_____
APPEARANCES:

Andrew M. Smigelski, Sugar Grove, Ohio, Pro Se Appellant.

Abigail M. Saving, Logan City Law Director, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Hocking County Municipal Court judgment entry finding Appellant, Andrew M. Smigelski, guilty of menacing, a fourth degree misdemeanor, and sentencing him to a fine and two years of probation.

{¶2} On appeal, Appellant asserts (1) "Defense counsel fell below an objective standard of reasonableness during the course of the case," (2) "Prosecutor's knowingly false statements improperly persuaded the trial judge during the bench trial," (3) "Trial court's decision to convict the defendant was in contradiction to the manifest weight of the evidence," and

(4) "Trial court's decision was done with an absence of sufficiency of evidence to support a conviction."

{¶3} Based upon our review of the law and the record, we overrule Appellant's assignments of error and affirm the judgment of the municipal court.

PROCEDURAL HISTORY

{¶4} Appellant became involved in a dispute with his neighbors, the James family, that resulted in him being arrested and charged with inducing panic, menacing, resisting arrest, and obstructing official business. The menacing charge arose from his dispute with the James family. The additional charges arose when police arrested Appellant at his house on the menacing charge.

{¶5} Shortly after his arrest, the State dismissed the inducing panic charge and amended the menacing charge to aggravated menacing. The State also served a warrant on Appellant to search his home. Appellant filed a motion to suppress evidence alleging that the search warrant was invalid on its face, which the State conceded at the suppression hearing. However, even though the court granted Appellant's motion to suppress, it does not appear that ruling had any practical effect regarding Appellant's case because none of the charges pending at the time (aggravated menacing,

obstructing official business and resisting arrest) were dismissed after the motion was granted. Appellant waived his right to a jury trial and a bench trial ensued.

{¶6} The State's first witness was Appellant's neighbor, Mrs. Jessica James, who testified that the day after putting a blue bulb in their porch light in support of two slain Westerville police officers, a sign appeared in their front yard that said "you must have a small penis," which included a drawing of male genitalia. She testified that she took the sign to the Logan Police Department.

{¶7} Mrs. James testified that approximately six months later on Monday, September 10, 2018, she and her family were outside when Appellant twice came out of his house, walked up the street and held up his phone like he was taking a video of them. Mrs. James testified that the next day, September 11th, she and her children were returning home when they saw Appellant "screaming and yelling" that he wanted his sign back. Mrs. James testified that led to a verbal exchange with Mrs. James making statements in support of our military and police and Appellant making statements against them, including accusations that members of Hocking County law enforcement committed rape and theft. Mrs. James testified that Appellant told her that because her family supported the "thin blue line," she

and her children would "get what was coming to us." Mrs. James testified that Appellant was "very aggressive and confrontational" during this discussion and it scared her. Mrs. James testified that she reported the incident and the theft of their light bulbs to the Logan Police Department.

{¶8} Mrs. James testified that the next morning as she came out of her house Appellant was on his porch again appearing to take video of her and said "this is the person who threatened me yesterday." She testified that she told Appellant that her family had friends and family in law enforcement. Mrs. James also reported this incident to the Logan police. Mrs. James' complaint was taken by Officer Mowery, who had gone through the police academy with her husband.

{¶9} On cross examination, Mrs. James was asked if Appellant's actions of going in and out of his house scared her. Mrs. James testified that Appellant's actions did not scare her, but they confused her. However, on re-direct examination, Mrs. James testified and clarified that she was fearful on the occasion when Appellant told her that she and her children would get what they had coming.

{¶10} The State's next witness was Mr. Kenneth James, who testified that on September 11th Appellant was yelling and calling Mrs. James names like "fat whore and a bitch and everything." Mr. James testified that

Appellant wanted his sign back. Mr. James also testified that Appellant was disparaging the military and police. Mr. James testified that Appellant became very aggressive toward his wife and looked at the James's and said "you and your kids will get what's coming to you."

{¶11} The State's next witness was Officer Josh Mowery of the Logan Police Department, who testified that on September 12th he wrote up Mrs. James' complaint that alleged that the day before Appellant had threatened her by stating that "her and her children would get what they had coming to them." The State then began playing video from Officer Mowery's body camera. The footage apparently showed Officer Mowery approaching Appellant's home regarding the James's complaint. The video showed Officer Mowery stating that he could see a hand gun on Appellant's couch so he asked Appellant to come out of his house, which Appellant refused to do. Consequently, Officer Mowery testified that he requested the SRT (Special Response Team).

{¶12} The video showed Officer Mowery instructing Appellant to come out because he was going to be arrested for menacing. The video showed Appellant refusing to come out of his house and claiming he had done nothing wrong. The video showed Officer Mowery informing Appellant that if he did not come out additional charges could be filed. The

video showed that after the SRT team arrived, a sheriff's deputy negotiated with Appellant through his front door.

{¶13} The prosecutor told the court that she could continue with the video, but informed the court that Appellant did not come out of the house until the 26-minute mark. The court stated that he did not need to see any more. Appellant's counsel requested to see Appellant's arrest, so the video was fast-forwarded to that point. However, technical difficulties were encountered with the playback of the video. While an attempt to fix the video was undertaken, counsel communicated to the judge that a plea agreement had been reached, so the case was continued.

{¶14} Upon reconvening, Appellant changed his mind and wanted to proceed with the trial. The State then asked the court to dismiss the counts of obstructing official business and resisting arrest, and rested its case on the aggravated menacing charge. The court then denied Appellant's oral Crim.R. 29 motion to dismiss the charge.

{¶15} Appellant's counsel requested to re-call Officer Mowery to the stand because he had not had an opportunity to cross-examine him, which the court granted. Appellant's counsel played a portion of Officer Mowery's body camera recording of Mrs. James communicating her complaint, while Officer Mowery occasionally answered counsel's questions. Counsel asked

Officer Mowery how long he had known Mrs. James and he responded:

"Twenty-five years, probably."

{¶16} During the video, Mrs. James told Officer Mowery she did not

feel threatened by Appellant. However, the video was paused and Officer

Mowery testified, explaining that Mrs. James did not feel threatened by

events that occurred that morning (September 12th), but she did feel

threatened by Appellant the day before (September 11th).

{¶17} Appellant testified on his own behalf. However, most of his

testimony consisted of playing Officer Mowery's body camera video of the

standoff and eventual arrest of Appellant with occasional pauses, during

which his counsel asked some questions. The video showed Officer

Mowery instructing Appellant to come out of his house because he was

wanted for menacing. The video also showed Officer Mowery informing

Appellant that if he did not come out he could face additional charges. In

the video Appellant repeatedly denied that he'd done anything wrong. In the

video Appellant stated "I am innocent. We had a talk yesterday, me and the

neighbors. There was no menacing involved."

{¶18} Appellant then testified that after he was arrested, he was

served with a search warrant. Appellant, reading from the warrant's

affidavit, testified that Appellant came to the door of his house with a gun in

his hand and officers backed away and called for additional units.  Appellant testified that he never had a gun is his hand.

{¶19} After playing the video for a while, Appellant's counsel returned to the warrant, asking Appellant to read the highlighted portion of the affidavit.  This time the prosecutor objected on grounds of relevancy to the menacing charge.  Appellant's counsel argued that it went to the officer's credibility.  The prosecutor stated that the officer who was the affiant for the warrant was not in court.  Appellant's counsel then argued it went to the police department's credibility as a whole.  The court found that the warrant was not relevant to the menacing charge.  The remainder of the video was played, culminating in Appellant's arrest.

{¶20} On cross examination, the prosecutor asked Appellant about September 11, 2018, the day before his arrest.  Appellant testified that when he saw Mrs. James that day he asked for his sign back.  Appellant testified that he was not cordial toward Mrs. James, but he claimed that he was not threatening.  When asked if he did any "name calling" and used obscenities, Appellant testified that he probably did, but could not recall any specific words.  Appellant testified that he denied telling Mrs. James that she and her children would get what's coming to them.

**{¶21}** After closing arguments, the court stated: "This is a case where the trier of fact, me, has to make a decision based on the testimony and the evidence presented at trial, not the videos [of the arrest] that took place, this that and the other."  Ultimately, the court stated that:

> [t]he issue is what happened when there was a confrontation and that confrontation was threatening.  It was menacing.  It was not aggravated menacing.
>
> So based on the evidence that I've heard and the evidence presented, the Court is going to make a finding of the lesser included offense of a fourth degree menacing.

**{¶22}** The court then proceeded to sentence Appellant, imposing a fine, a suspended jail sentence, and two years of community control.  It is from this judgment entry that Appellant appeals, asserting three assignments of error.

## ASSIGNMENTS OF ERROR

"I. DEFENSE COUNSEL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS DURING THE COURSE OF THE CASE.

II. PROSECUTOR'S KNOWINGLY FALSE STATEMENTS IMPROPERLY PERSUADED THE TRIAL JUDGE DURING THE BENCH TRIAL.

III. TRIAL COURT'S DECISION TO CONVICT THE

> DEFENDANT WAS IN CONTRADICTION TO THE
> MANIFEST WEIGHT OF THE EVIDENCE.
>
> IV. TRIAL COURT'S DECISION TO CONVICT WAS DONE
> WITH AN ABSENCE OF SUFFICIENY OF THE EVIDENCE
> TO SUPPORT A CONVICTION."

### ASSIGNMENT OF ERROR I

**{¶23}** Appellant alleges that his counsel was ineffective for (1) failing to investigate, (2) failing to obtain and present evidence, and (3) failing to impeach witness testimony.

**{¶24}** "To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial." *State v. Carter*, 4th Dist. Pickaway No. 18CA1, 2018-Ohio-4503, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[W]hen considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id*. at ¶ 13, quoting *Strickland* at 689. "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were 'so serious' that counsel failed to function 'as the "counsel" guaranteed * * * by the Sixth Amendment.' " *Id*., quoting *Strickland* at 687.

Failing to Investigate

{¶25} "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *State v. Bradley*, 42 Ohio St.3d 136, 146, 538 N.E.2d 373 (1989), citing *Strickland, supra,* 466 U.S. at 691, 104 S.Ct. at 2066.

{¶26} Appellant essentially contends that his counsel failed to acquire certain items through discovery, including a laundry list of "nearly two dozen other pieces of evidence" that he compiled and provided to his counsel. However, Appellant only generally describes these items (e.g. department policies) and fails to show how failure to acquire these items resulted in prejudice. We recognize counsel deference in not seeking discovery of these items under *Bradley*.

Failing to Present Evidence

{¶27} Appellant contends that counsel should have demanded that the video from Officer Mowery's body camera should have been played in its entirety. In particular, he claims the un-played video would have shown that Officer Mowery had known the James's for years and that Mrs. James did not feel threatened by Appellant's actions. However, both of these issues were brought out elsewhere during the trial so even accepting Appellant's

proffer of what the un-played video would have shown, there was no prejudice.

Failing to Impeach Witnesses

{¶28} Finally, Appellant alleges that his counsel failed to impeach Mrs. James regarding their stolen blue light bulb. Appellant claims that Mrs. James told Officer Mowery that Appellant had stolen their blue light bulb and additionally said that when she had asked Appellant, he had responded that he didn't know what she was talking about. However, he claims at trial Mrs. James testified that Appellant had not only taken the light, but also claimed that Appellant admitted to taking it.

{¶29} Appellant fails to cite the record where Mrs. James' purported statement to Officer Mowery can be located. However, for the sake of argument, even accepting all of Appellant's assertion as true, we find that not impeaching Mrs. James on this issue was negligible and therefore not so prejudicial as to deprive Appellant of a fair trial.

{¶30} In sum, Appellant has failed to make a verifiable, valid assertion that his counsel represented him in a deficient manner, let alone prove any prejudice to the extent that it would have deprived him of a fair trial. Therefore, we overrule Appellant's first assignment of error.

ASSIGNMENT OF ERROR II

{¶31} Appellant argues that the prosecutor made factual misrepresentations in her opening and closing statements. Specifically, Appellant asserts that the prosecutor made a misrepresentation in her opening statement by stating that "[p]erhaps the video will show that that's what was initially was set out to do, a question and answer session that resulted in, you know, [Appellant's] arrest." Appellant claims Officer Mowery intended on arresting Appellant even before he got to Appellant's residence so the prosecutor's statement in her opening statement was misleading.

{¶32} Appellant also claims that the prosecutor made a misrepresentation in her closing argument as well by stating that Mr. and Mrs. James both testified that Appellant pointed a finger at Mrs. James, when in fact Mrs. James never mentioned that Appellant pointed a finger at her.

{¶33} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 110, citing *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The touchstone of the analysis 'is the fairness of the

trial, not the culpability of the prosecutor.' " *Id*., quoting *Smith v.*

*Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶34} The alleged misrepresentation from the opening statement

pertains to Appellant's arrest for menacing, not the menacing charge itself.

And, the discrepancy between Mr. James' testimony that Appellant pointed

his finger at Mrs. James, but she did not, is deminimus, especially when

considered in light of the remaining evidence.  Therefore, even assuming

that these statements were misleading, we find that their impact on

Appellant's right to a fair trial was negligible.

{¶35} Furthermore, "[i]t is well settled that statements made by

counsel in opening statements and closing arguments are not evidence."

*State v. Frazier*, 73 Ohio St.3d 323, 338, 1995-Ohio-235, 652 N.E.2d 1000.

And "judges are presumed in a bench trial to rely only upon relevant,

material, and competent evidence."  *State v. Fox*, 69 Ohio St.3d 183, 189,

631 N.E.2d 124 (1994).  Here, because there is no evidence to rebut this

presumption, we also find that the trial judge reached his conclusion that

Appellant was guilty of menacing by relying on the evidence, and not on

statements made by counsel during their opening and closing statements.

{¶36} As such, we find that the prosecutor's statements did not affect Appellant's substantial rights.  Accordingly, we overrule Appellant's second assignment or error.

ASSIGNMENTS OF ERROR III AND IV

{¶37} Appellant asserts that his conviction is not supported by sufficient evidence and is also against the manifest weight of the evidence. We will begin our analysis by examining the weight of the evidence.

{¶38} "When determining whether a criminal conviction is against the manifest weight of the evidence, we 'will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' " *State v. Washington*, 4th Dist. Scioto No. 09CA3303, 2010-Ohio-5366, ¶ 13, citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus.  We " 'must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.' " *Id.*, quoting *State v. Smith,* 4th Dist. Pickaway No. 06CA7,

2007-Ohio-502 at ¶ 41, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist. 1995).

**{¶39}** "A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *State v. Adams*, 4th Dist. Lawrence No. 15CA2, 2016-Ohio-7772, ¶ 21, 84 N.E.3d 155, citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904, *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, 2008 WL 1061793, ¶ 31. And "a defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory." *Id.*, at ¶ 35, *see, e.g., State v. Wade,* 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry,* 10th Dist. Franklin No. 04AP–1113, 2005-Ohio-4547, ¶ 11.

**{¶40}** Appellant was found guilty of committing menacing in violation of R.C. 2903.22(A), which in pertinent part states: "No person shall knowingly *cause another to believe* that the *offender will cause physical harm to the person* or property of the other person, the other person's unborn, *or a member of the other person's immediate family*." (Emphasis added.)

**{¶41}** Mrs. James testified that Appellant stated that because her family supported the "thin blue line," she and her children would "get what

was coming to us." She testified that statement made her fearful. The testimony of both her husband and Officer Mowery corroborated Mrs. James' testimony in this regard.

{¶42} The only evidence in this case was witness testimony. Clearly, the judge found the testimony of the State's witnesses sufficiently credible to convict Appellant because he found that Mrs. James' statement that Appellant told her that she children would get what's coming to them was "threatening," and consequently found Appellant guilty of the lesser offense of menacing.

{¶43} In reviewing the record, we note that on cross examination, Mrs. James was asked if Appellant's "going in and out of his house when you guys were in the back yard" scared her. She testified that it confused her, but did not scare her. At first blush this testimony appears to contradict her assertion that Appellant's actions had scared her. However, this testimony pertained to Appellant's actions on September 10th when Appellant came out of his house and appeared to film the James's. Her fear arose on September 11th when Appellant threatened Mrs. James and her children, as is evident in her testimony on redirect examination when the prosecutor asked her: "when would you say that you developed the fear?" Mrs. James answered: "When he – when he told me that me and my children

were going to get what we had coming to us." Her testimony in this regard was also corroborated by both her husband and officer Mowery.

{¶44} In reviewing the remainder of the record, weighing the evidence and all reasonable inferences, considering the credibility of the witnesses, and resolving conflicts in the evidence, we find that the judge did not clearly lose his way so as create such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. Accordingly, Appellant's conviction is not against the weight of the evidence.

{¶45} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. Accordingly, we overrule Appellant's third and fourth assignments of error.

<u>Conclusion</u>

{¶46} Having overruled all of Appellant's assignments of error, we affirm the municipal court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**